# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
FEB 2 8 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No.  **19MJ0863**
An LG G Pad 7.0 electronic tablet, Model No. )
LG-V410, and a Motorola cell phone, model XT1765, )
IMEI 35411709134092; seized from David Alec White )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Southern___ District of ___California___ *(identify the person or describe property to be searched and give its location):* **See Attachment A**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* **See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___26___ U.S.C. § ___5861, etc___ , and the application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Lennea Gordon, Special Agent ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/28/19

*Judge's signature*

City and state: San Diego, California          Hon. Michael Berg, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Lennea Gordon, being duly sworn, depose and state:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a firearms investigation conducted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agents for the following electronic devices and accounts:

   a. An LG G Pad 7.0 electronic tablet, Model No. LG-V410 (the **Target Tablet**) in a clear plastic bag bearing an evidence label and labeled as Exhibit Number 000014); and

   b. A Motorola cell phone, model XT1765, IMEI 354117091340921 (the **Target Telephone**) (collectively the **Target Devices**).

2. ATF Special Agents seized the **Target Devices** on January 29, 2019, from David Alec WHITE's (WHITE) residence after a search warrant in Carlsbad, California. The Target Devices are currently being held as evidence at the ATF San Diego IV Field Office evidence vault, located at 5901 Priestly Drive, Suite 304, Carlsbad, California, 92008, in the Southern District of California.

3. Probable cause exists to believe that the **Target Devices** constitute evidence and instrumentalities of violations of federal criminal law, namely, Possession of an Unregistered Firearm under the National Firearms Act ("NFA"), Title 26 U.S.C. § 5861, and Title 18, U.S.C., § 922(a)(1)(A); manufacturing/dealing in firearms without a license (the **Subject Offenses**) as described in Attachment B, incorporated by reference.

## TRAINING AND EXPERIENCE

4. I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since July 2018, and am assigned to the San Diego IV Field Office. Prior to joining ATF, I was a

1

Special Agent with the U.S. Department of State's Diplomatic Security Service (DSS) for five years, working in Boston, Massachusetts, and Kuwait City, Kuwait. I am a graduate of the Federal Law Enforcement Training Center's (FLETC) Criminal Investigator Training Program (CITP), the DSS Basic Special Agent Course (BSAC), and the ATF National Academy's Special Agent Basic Training course (SABT). As an ATF Special Agent, I have received formal and informal training in federal firearms and drug laws. Throughout the course of my law enforcement career, I have participated in the application for, and execution of, numerous search warrants. Pursuant to 18 U.S.C. § 3051, I am empowered to enforce the criminal laws of the United States.

5. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for illegal firearms possessors and manufacturers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving illegal firearms possession generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, and phone numbers of co-conspirators. Further, I am aware that illegal firearms possessors and manufacturers illegally obtain firearms and ammunition from others, and do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities.

6. It is my experience as an online consumer of both firearm and non-firearm related items, that both prohibited and non-prohibited firearms possessors and manufacturers often use cellular telephones, tablets, and other digital devices to purchase firearm parts from online vendors, and that these vendors often request an email address at

the time of purchase to send purchase confirmations, invoices, tracking and delivery confirmations.

7. I also know that illegal firearms possessors and manufacturers sometimes maintain lists of clients that have outstanding debts, often referred to as "pay and owe" sheets. These debt lists are sometimes maintained on electronic files and stored on electronic storage devices.

8. In preparing this affidavit, I have conferred with other law enforcement personnel who are experienced in the area of firearms investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts or have had them related to me by persons mentioned in this affidavit.

9. Based upon my training and experience as an investigator, and consultations with law enforcement officers experienced in firearms investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Illegal firearms possessors and manufacturers often use cellular telephones, tablets, and other digital devices because they are mobile and they have instant access to telephone calls, text, web, social networking sites, and voice messages;

    b. Illegal firearms possessors and manufacturers will use cellular telephones, tablets, and other digital devices to set up the purchase and/or sale of firearms with suppliers and customers; and

    c. Illegal firearms possessors and manufacturers often use email and cellular telephones to communicate with each other regarding payment and other financial arrangements relating to the transportation of their illegal cargo.

10. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other investigators and agents

3

experienced in firearms investigations, and information gained through my training and experience. All the dates, times, and amounts listed in this affidavit are approximate and all dates refer to the current calendar year and all times refer to Pacific Standard Time (PST) unless specified otherwise. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause.

## TECHNICAL BACKGROUND

### a. Definition of "Firearm"

11. Based on my background, training, and experience, I know that Title 18, United States Code, Section 921(a)(3)(A) defines a "firearm" as "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." This definition includes "the frame or receiver of any such weapon," (see 18 U.S.C. § 921(a)(3)(B)), and "any combination of parts either designed or intended" from which a firearm can be "readily assembled." 18 U.S.C. § 921(a)(4)(C). According to 18 U.S.C. § 921(a)(3)(B), a "receiver" includes a "lower receiver."

12. Generally, most parts for a firearm (e.g. stocks, barrels, magazines) are not subject to domestic firearms licensing regulation by ATF. Accordingly, parts that are not subject to domestic firearms licensing regulation by ATF are often made by individuals and small businesses. These gun parts can be bought and sold without reporting the sales and without requiring a background check as is required by federal law for most firearm purchases.

4

13. According to Title 18 U.S.C. § 921(a)(3)(A) and (a)(3)(B), a lower receiver is considered a "firearm." The lower receiver by itself is regulated and controlled by ATF in the same way as a fully assembled firearm. The manufacture, sale, transfer, and disposition of lower receivers are regulated by ATF. Pictured below is a lower receiver for an AR-15-style rifle or pistol[1]:

    **b.**    **Firearm Milling and Drilling**



14. Based on my training and experience and discussions with other ATF employees, I know that non-fully-milled lower receivers are referred to by the commercial firearms industry as "blank", "an 80%," "an 80% blank," "an 80% lower," "casting" or "an AR-15 80%." These terms developed based on the perception that a non-fully-milled lower receiver, made of aluminum, metal, or polymer was 80% of a firearm, and therefore unregulated by ATF. The term "80%," and variations of it, are not used by ATF and are

---

[1] Photo 1 - AR-15 lower receiver (photo not specific to this case).

5

not officially recognized by ATF. In this affidavit, the un-milled lower receivers described above will be referred to hereafter as "unfinished lower receivers." Depicted below are two pictures of unfinished lower receivers.[2]

15. Unfinished lower receivers are milled into firearms through the use of specialized tools, typically a Computer Numeric Control ("CNC") machine, drill press or a hand drill, a Dremel tool (a versatile, handheld rotary bit tool that can be used to cut, grind, drill, sand, and mill various materials), and other various types of milling equipment.

16. Using a CNC machine, drill press or a hand drill, the equipment operator drills, cuts, or mills cavities in specific locations on the AR-15 variant lower receiver. For example, in the following picture[3], compare the unfinished lower receiver ("AR-15 variant receiver") depicted on the left with the AR lower receiver depicted on the right:



17. The milling/drilling process transforms the unfinished lower receiver into a finished AR lower receiver, or more generally, a Self-Manufactured Unserialized Firearm, by creating the precise shape and space necessary for the lower receiver to accept the parts that will allow the firing of a projectile. These shapes or cavities must be created to the exact specifications, as determined by the ATF, for the lower receiver to be classified as a

---

[2] Photo 2 - AR-15 unfinished lower receivers (photos unrelated to this case).
[3] Photo 3 - (clockwise from top left) AR-15 variant lower receiver, AR-15 lower receiver, AR-15 lower receiver (top view) (photos unrelated to this case).

6

firearm. If these cavities are not formed to the exact specifications required, the lower receiver is not considered a firearm and will not function and may break. When the process is done correctly, it also creates the holes necessary to attach the upper receiver and barrel to the lower receiver. The hammer, bolt or breechlock, and firing mechanism are the internal mechanical parts that combine with a trigger, firing pin, and other parts to form a functioning rifle.

18. The same process of milling and cutting is also used to make Glock style pistols and Springfield 1911-style pistols. Numerous companies have made "Do-It-Yourself" kits, an example of which is pictured below[4], containing the tools, jigs and 80% lower receiver parts to finish the lower receiver and make a completed firearm.



19. The components for these Self-Manufactured Unserialized Firearms are easily purchased by those prohibited from owning firearms because no background check is required. And, and unlike a fully assembled rifle or pistol manufactured by a licensed manufacturer, Self-Manufactured Unserialized Firearms are completely untraceable because they have no serial number and no manufacturer identification.

---

[4] Photo 4 – Glock style kit with jig (red) and parts for firearm assembly (photo not specific to this case).

7

### c. **National Firearms Act (NFA)**

20. The NFA requires the registration in the National Firearms Registration and Transfer Record ("NFRTR") of all firearms that meet the NFA definition of a firearm. One such category of NFA firearms that requires registration is "a rifle having a barrel or barrels of less than 16 inches in length," also known as a Short Barrel Rifle (SBR). In addition to requiring registration in the NFRTR, SBRs and other NFA firearms also must bear a serial number to be compliant with the NFA.

## PROBABLE CAUSE

21. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other investigators and agents experienced in firearms investigations, and information gained through my training and experience. All the dates, times, and amounts listed in this affidavit are approximate and all dates refer to the current calendar year and all times refer to Pacific Standard Time (PST) unless specified otherwise. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for the search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause.

### a. **December 14, 2018 – Recovery of Short Barrel Rifle**

22. On December 14, 2018, United States Probation Officers (USPOs) with the United States Probation Office conducted a routine residential visit to a probationer at his residence at 315 Walnut Avenue, Apartment C, Carlsbad, California, 92008. During the visit, USPOs identified, in plain view, what appeared to be a rifle located in one of the

8

residence's bedrooms. Two revolvers contained in gun socks were also found in the same bedroom. USPO's did not conduct a thorough search of the bedroom and bathroom at the time and only seized what was in plain view.

23. The probationer denied ownership of the firearms and stated to USPOs that the firearms belonged to his roommate, WHITE. Due to the probationer's prohibited status, USPOs seized the firearms. USPOs reported they were subsequently contacted by WHITE, who stated the seized firearms belonged to him, not the resident on probation, and that WHITE wanted his firearms returned. USPOs notified the ATF San Diego Field Office of the seizure.

  **b.** **December 17, 2018 – ATF Analysis of Seized Firearms**

24. On December 17, 2018, ATF agents met with USPOs at their office and examined the rifle and two revolvers. The rifle appeared to be an AR-15-type SBR manufactured from an unfinished lower receiver bearing no manufacturer markings or serial numbers. A subsequent measuring of the rifle's barrel by ATF agents determined the rifle's barrel to be approximately twelve (12) inches in length.

25. ATF agents queried WHITE in the NFRTR and determined that WHITE has no NFA firearm registered to him. The possession of an unregistered SBR is in violation of Title 26 § 5861(d) of the NFA. Furthermore, all NFA firearms are required to have a serial number, in compliance with the firearm marking laws, registered into the NFRTR. As the SBR recovered at the residence has no serial number, it does not meet the NFA registration criteria.

  **c.** **December 18, 2018 – Phone Conversation**

26. On December 18, 2018, an ATF agent placed a ruse telephone call, posing as a United States Probation Office property custodian, to WHITE. WHITE admitted he had three firearms (one rifle and two revolvers) taken from his bedroom that he wanted them

returned. WHITE stated there was no serial number on the rifle because it was an "eighty percent" and that he had built the firearm from parts he had purchased or borrowed.

27. WHITE stated he and a friend had plans to shoot the rifle in Arizona on property WHITE owns in Arizona, but the rifle was seized by USPOs before they were able to do so. WHITE also stated he bought the rifle's lower receiver from an online shop named Palmetto and stated he could provide a receipt from Palmetto to prove ownership of the lower receiver.

28. Following a ruse telephone call, WHITE provided agents the SUBJECT ACCOUNT as his email address. Agents conducted database checks and confirmed this email address to be associated with WHITE.

### d. January 29, 2019 – Search Warrant

29. On January 29, 2019, at approximately 0605 hours, agents went to 315 Walnut Avenue, Apartment C, Carlsbad, California, 92008, with the purpose of executing an arrest warrant (19MJ0288) for WHITE and a search warrant (19MJ0289) for WHITE's bedroom and bathroom. Upon arriving at the residence, the agents approached the front door and made their presence known by announcing their law enforcement status and that they were there with a warrant. WHITE answered the door and was taken into custody. WHITE's roommate, Gary BOBEL, a United States Probation Office probationer, was called out and detained.

30. Once inside the residence, the agents obtained BOBEL's consent to search the common areas of WHITE's residence. During a search of WHITE's bedroom, a Glock 9mm magazine containing seven (7) rounds of Winchester 9mm Luger ammunition was discovered. Once inside the residence, the Special Agents obtained BOBEL's consent to search the common areas of WHITE's residence. During a search of WHITE's living room, the **Target Tablet** was discovered. During a search of WHITE's bedroom, the

1   **Target Telephone** and a Glock 9mm magazine containing seven (7) rounds of Winchester 9mm Luger ammunition were discovered.

31. Following the search, WHITE was placed under arrest and booked into federal custody pursuant to an arrest warrant (19MJ0288).

32. Following the search, WHITE was placed under arrest and booked into federal custody pursuant to a federal arrest warrant.

### e.  **WHITE - Criminal History**

33. ATF agents received certified conviction documents showing that WHITE has been convicted of a misdemeanor battery conviction for a violation of California Penal Code (PC) § 242 on September 28, 2015. Per California PC12021(c)(1), anyone convicted of PC 242 is prohibited from owning or possessing a firearm for ten (10) years of the conviction. The conviction documents also state that he is prohibited from having a firearm.

34. **Target Devices** were seized for evidence pursuant to the search warrant. I am not relying upon, and ask the Court not to consider, anything the officers may or may not have found in this search of the **Target Devices**.

35. Based upon my experience and training, consultation with other law enforcement officers experienced in firearms investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the illegal firearms possession activities of WHITE and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, messages and posts from social networking sites like Facebook, pictures and other digital information are stored in the memory of the cellular telephone described herein.

## SEARCH METHODOLOGY

36. It is not possible to determine, merely by knowing the tablet device or cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

37. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the tablet and telephone and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

38.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

### GENUINE RISKS OF DESTRUCTION OF EVIDENCE

39.     Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

40.     The United States did request permission to search digital devices seized during the search of the residence in the original search warrant. However, due to confusion regarding the scope of the warrant, the **Target Devices** were not searched and the original residential warrant expired.

### CONCLUSION

41.     Based on all of the facts and circumstances described above, there is probable cause to conclude that WHITE used the **Target Devices** to facilitate the **Subject Offenses** by transmitting and storing data, which constitutes evidence of the **Subject Offenses**.

42.     Because the **Target Devices** were seized unexpectedly from WHITE during a search warrant and has been stored in a secure location, there is probable cause to believe that evidence of illegal activity committed by WHITE continues to exist on the **Target Devices**.

43.     Based upon my experience and training, consultation with other agents in firearms investigations, consultation with other sources of information, and the facts set

13

forth herein, I know that the items to be seized set forth in Attachment B are likely to be found in the property to be searched described in Attachment A. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

*[signature]*
Lehnea Gordon, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me this 28th day of February, 2019.

*[signature]*
The Honorable Michael Berg
United States Magistrate Judge

14

## ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEARCHED

The properties sought to be searched are a cellular tablet device and a cellular telephone:

a. An LG G Pad 7.0 electronic tablet, Model No. LG-V410 (the **Target Tablet**) in a clear plastic bag bearing an evidence label and labeled as Exhibit Number 000014); and

b. A Motorola cell phone, model XT1765, IMEI 354117091340921 (the **Target Telephone**) (collectively **Target Devices**)

They are currently in the possession of the Bureau of Alcohol, Tobacco, Firearms, and Explosives at the San Diego IV Field Office evidence vault, located at 5901 Priestly Drive, Suite 304, Carlsbad, California, 92008.

## ATTACHMENT B

## DESCRIPTION OF EVIDENCE TO BE SEARCHED FOR AND SEIZED

The following constitute evidence, and instrumentalities of violations of federal criminal law, namely, Possession of an Unregistered Firearm under the National Firearms Act ("NFA"), Title 26 U.S.C. § 5861, and Title 18, U.S.C., § 922(a)(1)(A); manufacturing/dealing in firearms without a license (the Subject Offenses):

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:
    a. tending to indicate efforts to manufacture/obtain/possess firearms and/or ammunition;
    b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to manufacture/obtain/possess firearms and ammunition;
    c. tending to identify co-conspirators, criminal associates, or others involved in manufacturing/obtaining/possessing firearms and/or ammunition;
    d. tending to identify travel to or presence at locations involved in the manufacturing/obtaining/possessing firearms and/or ammunition;
    e. tending to identify the user of, or persons with control over or access to, the subject phone; or
    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.